958 A.2d 66 (2008)
403 N.J. Super. 250
STATE of New Jersey, Plaintiff-Respondent,
v.
Anthony ALEXANDER, Defendant-Appellant.
No. A-6333-06T4
Superior Court of New Jersey, Appellate Division.
Submitted September 24, 2008.
Decided October 10, 2008.
*67 Yvonne Smith Segars, Public Defender, for appellant (Durrell Wachtler Ciccia, Designated Counsel, on the brief).
Theodore F.L. Housel, Atlantic County Prosecutor, for respondent (Jack J. Lipari, Assistant Prosecutor, of counsel and on the brief).
Before Judges FISHER, C.L. MINIMAN and BAXTER.
*68 The opinion of the court was delivered by
FISHER, J.A.D.
In this appeal, we reverse the denial of post-conviction relief because trial counsel's representation of both defendant and Charles Cottman, who allegedly participated in crimes with defendant, placed counsel in a per se conflict of interest. Because the conflict arose between the entry of a guilty plea but before sentencing, there is no cause to disturb the plea, but defendant is entitled to be resentenced following a determination of what might have occurred had defendant sought to cooperate with law enforcement regarding the Cottman prosecution.

I
The record on appeal reveals that defendant entered a plea of guilty in 1996 to weapon and drug offenses. He was sentenced to an aggregate twenty-four-year term of imprisonment, with a twelve-year period of parole ineligibility. He did not appeal.
Defendant filed a petition for post-conviction relief in 2001 that was eventually denied in 2004. He appealed, raising numerous issues, including an argument that he was denied the effective assistance of counsel because his trial attorney, John Bjorklund, Esq., had also been assigned to represent Charles Cottman, an individual alleged to have been involved in criminal activities with defendant. We rejected most of defendant's contentions, but we agreed that defendant had made a "prima facie showing that his trial counsel had a conflict of interest and that the conflict created a potential for prejudice"; we remanded for further exploration of this issue at an evidentiary hearing. State v. Alexander, No. A-2694-04T4, 2006 WL 1302254 at *1 (May 12, 2006), certif. denied, 188 N.J. 220, 902 A.2d 1237 (2006).
Following our remand, the parties agreed that a hearing was unnecessary in light of their stipulation of facts. The parties stipulated: that, on June 13, 1996, when Bjorklund was representing defendant, he was also assigned by the Public Defender's Office to represent Cottman; that Bjorklund received discovery from the Public Defender's Office regarding Cottman on that same date; and that defendant was still representing both defendant and Cottman when defendant was sentenced on July 26, 1996. They also stipulated: that, if called,[1] Bjorklund would testify that he had in his possession no files concerning either this matter or Cottman's matter; that he had no recollection of when he received the discovery in Cottman's matter; and that if he had known there was a conflict, he would have ceased representing defendant.
In light of these stipulated facts, defendant argued during the remand proceedings that, prior to sentence being passed in this case, Bjorklund not only had information that his other client, Cottman, was a potential witness against defendant, but also that the discovery provided revealed that the State had evidence suggesting defendant and Cottman were involved in witness tampering and threatening witnesses with regard to a robberyinformation that made defendant a potential witness against Cottman, and vice versa. Consequently, defendant argued to the PCR judge that defendant was in a position to incriminate Cottman and, in that way, garner favor from the prosecutor in *69 connection with this case, or otherwise seek and potentially obtain the benefit of a mitigating factor at the time of sentencing. See N.J.S.A. 2C:44-1(b)(12).
The PCR judge inferred from the stipulated facts that the State never sought defendant's cooperation with regard to its prosecution against Cottman and, "almost as a virtual impossibility," there "was no likelihood of the defendant having suffered prejudice" from Bjorklund's dual representation. The judge, for these and other reasons set forth in an oral decision, denied the PCR petition by order entered on June 21, 2007.
Defendant appealed, raising the following argument for our consideration:
DEFENDANT'S MOTION FOR POST CONVICTION RELIEF MUST BE GRANTED AS HIS LAWYER HAD AN OBVIOUS CONFLICT OF INTEREST.
We agree that defendant was entitled to post-conviction relief and reverse.

II
We invoked in the prior appellate proceedings, and we invoke again, the accepted principle that a criminal defendant has the right to counsel "whose representation is unimpaired and whose loyalty is undivided." State v. Murray, 162 N.J. 240, 249, 744 A.2d 131 (2000). In this regard, we previously found there was sufficient evidence of a conflict to warrant further elucidation at a hearing in the trial court. With the development of these issues following our remand, it is now clear that Bjorklund's dual representation of both defendant and Cottman prior to and while defendant was being sentenced represented a conflict of interest. We are also now satisfied that, as a result, defendant was not required to show actual prejudice, or a likelihood of prejudice, to warrant relief.
In its recent decision in State v. Cottle, 194 N.J. 449, 465-70, 946 A.2d 550 (2008), the Court summarized our jurisprudence when criminal defense attorneys engage, whether intentionally or not, in the dual representation of individuals with competing interests. When a per se conflict has been found, "prejudice is presumed in the absence of a valid waiver,[[2]] and the reversal of a conviction is mandated." Id. at 467, 946 A.2d 550; see also State v. Norman, 151 N.J. 5, 24-25, 697 A.2d 511 (1997); State v. Bellucci, 81 N.J. 531, 543, 410 A.2d 666 (1980). The Court went on to describe the existing parameters of this rule:
Thus far, we have limited the per se conflict on constitutional grounds to cases in which "a private attorney, or any lawyer associated with that attorney, is involved in simultaneous dual representations of codefendants." In all other cases, "the potential or actual conflict of interest must be evaluated and, if significant, a great likelihood of prejudice must be shown in that particular case to establish constitutionally defective representation of counsel."
[Cottle, supra, 194 N.J. at 467-68, 946 A.2d 550 (citations and footnote omitted).]
The Cottle Court recognized that it had "rejected extending the per se conflict approach to cases in which staff attorneys in the same public defender's office represent codefendants in the same criminal action," citing State v. Bell, 90 N.J. 163, 167, 447 A.2d 525 (1982), and "in which two private attorneys representing codefendants discussed forming a partnership, but *70 did not establish the partnership until after the trial," citing Norman, supra, 151 N.J. at 29-30, 697 A.2d 511. Cottle, supra, 194 N.J. at 467 n. 8, 946 A.2d 550. Neither of these circumstances has application here.[3]
Here, after defendant entered a plea of guilty but before he was sentenced, Bjorklund, a pool attorney, was assigned by the public defender's office to represent Cottman. Whether or not he was aware of it, Bjorklund was in possession of discovery in both cases that revealed that the State believed defendant and Cottman had approached and allegedly threatened a victim of a robbery they had allegedly committed. There was thus a potential that each client could be a witness against the other. Defendant had already pled guilty and was facing a potentially lengthy prison sentence; arguably, he could have provided useful information to the State regarding the conduct of Cottman.[4]
At the time of our prior decision in this matter, we were not fully cognizant of the circumstances surrounding defendant's claim that Bjorklund was in a conflict of interest.[5] Accordingly, we remanded for development of the record. Now that the parties have stipulated facts which reveal not only a conflict of interest but a conflict that requires application of the per se rule, we will reverse the order denying post-conviction relief and remand for resentencing. Because the conflict arose after defendant pled guilty, there is no basis for disturbing defendant's plea.

III
For the sake of completeness, we also consider and reject the PCR judge's determination that there was no likelihood of prejudice to defendant as a result of the dual representation. Indeed, the competing arguments on this point provide further proof of the wisdom of the per se rule adopted by our Supreme Court. As the Court has repeatedly recognized, as recently as in Cottle, supra, 194 N.J. at 468, 946 A.2d 550, the per se rule is necessary because "[t]he harmful effects of a conflict... will not ordinarily be identifiable on the record," Norman, supra, 151 N.J. at 24, 697 A.2d 511, and because, without a per se rule, "[r]equiring a showing of prejudice would place an impossible burden on the accused and force the reviewing courts to engage in `unguided speculation,'" Bellucci, supra, 81 N.J. at 543, 410 A.2d 666 (quoting Holloway v. Arkansas, 435 U.S. 475, 491, 98 S.Ct. 1173, 1182, 55 L. Ed.2d 426, 438 (1978)). The case at hand very much fits the class of cases that prompted the Court to adopt a per se rule.
If we were to engage in this speculation, we would find merit in defendant's argument of a likelihood of prejudice resulting from the dual representation. As defendant's PCR counsel cogently asserted in the trial court:

*71 [Defendant] was already facing significant jeopardy [when the conflict arose]. He'd already pled and was facing a huge sentence. I don't know how badly andyou know, years later we'll never know how badly the Prosecutor's Office wanted Mr. Cottman. They had [defendant]. We don't know, as we sit here today, if he could have called and said, "Look, I don't know how bad you want Cottman. I've got a defendantI've got a client who's willing to cooperate with you regarding that." The prosecutor had these records. He wouldn't have been giving them something they didn't have. They had chosen not to follow upon that lead. So by saying, "look, you know, you've read the police reports. You know, Mr. Prosecutor, that there was this witness tampering that took place afterwards. My client's willing to cooperate in that regard if you'll give him some consideration in his sentence." That's one possible scenario. Another is Cottman, who [had] not yet pled, who was facing significant jeopardy, and we know that they were hot for [defendant], the Prosecutor's Office, Mr. Cottman could have come forward and said, "Give me a better sentence, and I'll give you one more thing against [defendant]." That's the problem. That's the conflict. We don't just have one lawyer with information about one person. It's one lawyer with information about two clients.
If the matter had been pursued on defendant's behalf as urged in this argument, defendant could have attempted to curry favor from the prosecutor at the time of sentencing,[6] and could have asserted a potential mitigating factor that might have served to lessen the sentence eventually imposed. See N.J.S.A. 2C:44-1(b)(12) ("In determining the appropriate sentence ..., the court may properly consider ... [t]he willingness of the defendant to cooperate with law enforcement authorities").
In relying upon the stipulated facts, the judge recognized that Bjorklund had no recollection of the discovery he received in the Cottman matter and would have removed himself from this case if he was aware of the conflict. We discern from this and other comments, that the judge believed that Bjorklund was unaware of the contents of the Cottman discovery, which would have revealed defendant's ability to incriminate Cottman. As a result, the PCR judge concluded that defendant could not be prejudiced by Bjorklund's continued representation of him at sentencing, reasoning that Bjorklund could not make use of information unknown to him.
We cannot say that the PCR judge's conclusion is wholly without merit; it presents another plausible interpretation that may be gleaned from the stipulated facts. But, the PCR judge's interpretation is no more plausible than the scenario urged by defendant. We cannot say that the PCR judge's interpretation is likely more accurate than the other suggested by defendant. But, again, it is the fact that what might have occurred is a matter of speculation that warrants the granting of relief. Cottle, supra, 194 N.J. at 468, 946 A.2d 550. As observed, we need not further engage in this type of speculation because the per se rule compels the granting of post-conviction relief.

IV
We lastly consider the relief necessary to remedy this peculiar circumstance. *72 As we have mentioned, the conflict of interest did not arise until after defendant pled guilty. As a result, the proceedings up until June 13, 1996the date Bjorklund began his representation of Cottmanare not tainted by the conflict, and no valid or principled basis has been advanced for vacating defendant's plea. But the conflict of interest arose prior to sentencing, necessitating post-conviction relief in the nature of new sentencing proceedings.
In remanding for new sentencing proceedings, however, we do not mean to suggest the PCR judge need only sentence defendant based on the original record with the only new circumstance being the appearance of new defense counsel. As we have observed, defendant may have sought to cooperate with the State regarding its prosecution of Cottman and, through those efforts, may have been able to convince the sentencing judge of his entitlement to the application of N.J.S.A. 2C:44-1(b)(12) (mitigating factor twelve, cooperation with law enforcement). The problem that presents itself, however, is that the Cottman matter was resolved long ago and defendant is no longer able to actually provide the cooperation with law enforcement officials that may have warranted application of that mitigating factor.
Without a doubt, the passage of time has confounded the crafting of appropriate relief. Because defendant was not provided with the assistance of independent counsel as of June 13, 1996, his opportunity to generate the circumstances that would permit application of mitigating factor twelve has been forever lost. This cannot mean, however, that defendant must be left remediless or may be awarded only the empty gesture of a new sentencing hearing based on the original sentencing record.
Although what might have actually occurred at defendant's original sentencing hearingif defendant had been counseled to cooperate with the Cottman prosecutionmay never be concretely determined, the PCR judge must nevertheless ascertain whether it was likely that defendant could have demonstrated the applicability of mitigating factor twelve at the time of the original sentencing. We recognize this will entailassuming time has not dimmed all memoriesthe taking of testimony from those with knowledge of what defendant might have offered with regard to Cottman and whether it would have been of interest to the State. It is by no means unusual for a PCR court to explore factual matters not previously pursued to determine whether a defendant was deprived of the effective assistance of counsel. State v. DiFrisco, 174 N.J. 195, 231-36, 804 A.2d 507 (2002); State v. Martini, 160 N.J. 248, 261-63, 734 A.2d 257 (1999). Accordingly, we remand for the exploration and consideration of these circumstances at an evidentiary hearing so that the PCR judge may arrive at a principled assessment of what the circumstances might have been had defendant attempted to cooperate with the Cottman prosecution.
We recognize, depending upon the evidence presented during the remand proceedings, one possible outcome is that the judge may find the State would have had no interest in defendant's offer of cooperation and that the circumstances would have been no different had cooperation been offered prior to the original sentencing. If that is the finding reached by the PCR judge, defendant must still be resentenced, although our holding should not be deemed to foreclose the judge's imposition of the same terms that were originally imposed.
We reverse the order under review and remand for further proceedings in conformity *73 with this opinion. We do not retain jurisdiction.
NOTES
[1] The record suggests that Bjorklund was residing outside the country at the time of the hearing.
[2] No evidence of a waiver was presented following our remand, and the stipulated facts permit only an inference of an absence of a waiver.
[3] Although the Court referred to the application of the rule when attorneys represent "codefendants," it is clear that this is not a literal requirement. Indeed, the Court applied the per se rule to the circumstance where defense counsel was the target of a criminal investigation in the same county in which he represented defendant. Cottle, supra, 194 N.J. at 468-69, 946 A.2d 550. Cottle and his attorney were not "codefendants."
[4] The record reveals that, after defendant was sentenced, Cottman entered into an agreement whereby he pled guilty to certain drug offenses and the robbery charge was dismissed. As a result, Cottman received a four-year prison term.
[5] Although our prior mandate could have been clearer, our intent was not to have the trial judge consider whether prejudice accrued if the circumstances, about which we were largely in the dark, required application of the per se rule.
[6] Considering the comparatively lighter sentence received by Cottman, see n. 4, supra, the State may have benefited from any assistance that defendant could have provided in that prosecution.